Judge Thomas S. Zilly

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10

IN THE MATTER OF THE
COMPLAINT OF FOSS OFFSHORE
WIND HOLDINGS, LLC, AS ALLEGED
BAREBOAT CHARTERER, AND FOSS
MARITIME COMPANY, LLC, AS
ALLEGED SUB-BAREBOAT
CHARTERER, OF THE VESSEL
REBEKAH, OFFICIAL NUMBER
623866, AND HER ENGINES,
MACHINERY, GEAR, TACKLE,
APPAREL AND ALL OTHER
APPURTENANCES, PETITIONING
FOR EXONERATION FROM AND/OR
LIMITATION OF LIABILITY

IN ADMIRALTY

NO. 2:24-CV-00237-TSZ, c/w No. 2:24-cv-246

**FOSS MOTION FOR PARTIAL SUMMARY JUDGMENT**

**NOTE ON MOTION CALENDAR: DECEMBER 27, 2024**
**(28-day motion)**

11
12
13
14
15
16
17
18

19

        Limitation Petitioners, Foss Offshore Wind Holdings, LLC ("FOWH") and Foss

20

Maritime Company, LLC ("Foss Maritime") (collectively, "Foss"), respectfully move this

21

Court for Partial Summary Judgment pursuant to Federal Rule of Civil Procedure 56,

22

dismissing the claims for contractual indemnity, defense, and insurance coverage filed

23

against Foss by Tradewinds Towing, LLC ("TWT") and Magazine Tug, LLC ("MTL")

24
25
26

MOTION FOR PARTIAL
SUMMARY
JUDGMENT - 1
NO.: 2:24-CV-00237-JNW, C/W
2:24-CV-00246

**LISKOW & LEWIS**
**Raymond T. Waid**
**Elizabeth A. Strunk**
**Elizabeth B. McIntosh**
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
(504) 556-4042 Telephone
rwaid@liskow.com

(collectively, "Tradewinds") relating to TWT employee Stephen Dufrene's incident onboard the tugboat REBEKAH on May 5, 2023.

Tradewinds claims FOWH owes these contractual obligations pursuant to a Bareboat Charter Agreement ("Bareboat Charter") between MTL and FOWH. However, under the plain language of the Bareboat Charter, its terms and obligations did not commence until the vessel was delivered to FOWH. At the time of the incident, Tradewinds retained possession and control of the vessel; it had not yet been delivered to FOWH. In fact, the vessel was not delivered to FOWH until weeks after the incident occurred. Because the Bareboat Charter had not commenced at the time of the incident, Foss is entitled to judgment, as a matter of law, that it does not owe Tradewinds indemnity, defense, or insurance coverage under the terms and obligations of the Bareboat Charter.

## I.    BACKGROUND

### A.    The Incident

This case arises out of an injury suffered by Stephen Dufrene, a TWT employee and Chief Engineer on the M/V REBEKAH official no. 623866 (the "Vessel").[1] On May 5, 2023, he was aboard the Vessel while it was docked at TWT's facility in Morgan City, Louisiana.[2] At the time of the incident, MTL owned the Vessel[3] and TWT crewed and operated the

---

[1] Dkt. #1.
[2] *Id.*
[3] Dkt. #19 at p. 6.

MOTION FOR PARTIAL
SUMMARY
JUDGMENT - 2
NO.: 2:24-CV-00237-JNW, C/W
2:24-CV-00246

**LISKOW & LEWIS**
**Raymond T. Waid**
**Elizabeth A. Strunk**
**Elizabeth B. McIntosh**
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
(504) 556-4042 Telephone
rwaid@liskow.com

Vessel. Dufrene was injured when he was working with other TWT employees to install a new wire on the Vessel's tow winch.[4]

### B.    The Bareboat Charter

Over a month before the incident, on April 3, 2023, FOWH entered into a Purchase and Sale Agreement with MTL to purchase the Vessel.[5] Due to delays in closing, however, on May 1, 2023, FOWH and MTL executed the Bareboat Charter, so that FOWH could take possession of the Vessel prior to closing on the sale.[6]

Pursuant to Articles 1, 3, and 4 of the Bareboat Charter, FOWH's charter of the Vessel was for a specific "period of hire" or "charter term," during which FOWH would have "full, complete, and exclusive possession, command, and control" of the Vessel, which would commence upon "delivery" of the Vessel from MTL to FOWH:

ARTICLE 1. CHARTER OF VESSEL

\* \* \*

1.2    It is expressly understood and agreed that this Charter Party is intended as a bareboat charter of said Vessel by MTL to CHARTERER [FOWH] *for a period of hire and charter term*, and that *CHARTERER, during such period,* shall properly man, equip, and supply said Vessel, and *shall have full, complete, and exclusive possession, command, and control of it,* and of its operation and navigation, and at all times the Vessel is under charter the CHARTERER shall have complete and exclusive direction, control and supervision of

---

[4] Dkt. #1 at p. 4.
[5] Declaration of Raymond Waid ("Waid Dec.") *see* ¶ 2, Exhibit 1, Purchase and Sale Agreement, FOSS_000053-000076.
[6] Waid Dec. ¶ 3, Exhibit 2, Bareboat Charter, FOSS_000031-000039.

**LISKOW & LEWIS**
**Raymond T. Waid**
**Elizabeth A. Strunk**
**Elizabeth B. McIntosh**
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
(504) 556-4042 Telephone
rwaid@liskow.com

the master and crews, who shall for all purposes be exclusively within the employment of CHARTERER.

ARTICLE 3. <u>CHARTER TERM</u>

This charter shall be for a minimum term of not less than one (1) day and a maximum term of not more than ninety (90) days **commencing upon delivery** and terminating upon the earlier of redelivery by CHARTERER or the Closing. Subject to the foregoing, CHARTERER may terminate this charter and redeliver the Vessel to MTL at any time.

ARTICLE 4. <u>DELIVERY</u>

4.1 **MTL shall deliver the Vessel to CHARTERER** at the Vessel's current location in Amelia, LA, at 9:00 am local time on the Effective Date. **Acceptance of the Vessel by CHARTERER at such time or otherwise shall constitute delivery of the Vessel** to CHARTERER and MTL's full performance under this Charter Party. CHARTERER shall not thereafter be entitled to make claim against MTL respecting the condition of the Vessel on any basis whatsoever, including without limitation based upon any unseaworthiness, negligence, latent defect or condition or any representation or warranty, express or implied, relating to the condition of the Vessel.[7]

Following FOWH and MTL's execution of the Bareboat Charter, FOWH executed a Sub-Bareboat Charter of the Vessel to Foss Maritime.[8]

---

[7] *Id.* (emphasis added).
[8] Waid Dec. ¶ 4, Exhibit 3, Sub-Bareboat Charter and docusign certificate, FOSS_003513-003527.

MOTION FOR PARTIAL
SUMMARY
JUDGMENT - 4
NO.: 2:24-CV-00237-JNW, C/W
2:24-CV-00246

**LISKOW & LEWIS**
**Raymond T. Waid**
**Elizabeth A. Strunk**
**Elizabeth B. McIntosh**
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
(504) 556-4042 Telephone
rwaid@liskow.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

### C.     Tradewinds' Possession and Control Over the Vessel

On May 3, 2023, two days after the Bareboat Charter was executed, MTL informed Foss that it would need to keep the Vessel for an additional ten days, until May 13, 2023, to complete additional work on the Vessel.[9] For example, on May 5, 2023, TWT performed repairs on the Vessel's hydraulic steering unit[10] and replaced an old wire on the Vessel's tow winch.

On May 5, 2023, TWT employee and Vessel crewmember Dufrene was injured while he and other TWT employees were installing the new wire on the Vessel's tow winch.[11] Two Foss employees were on board the Vessel at the time of the incident but only to inspect the Vessel for additional work that would need to be done either prior to or post-delivery.[12] The Foss employees were not Vessel crewmembers and they were not assisting with the replacement at the time of Dufrene's injury.[13]

In the days after the incident, TWT's work on the Vessel continued. On May 8, 2023, TWT's President, Dominique Smith, informed Foss of additional work that was in progress but would not be completed before May 11 or May 12.[14] Over the following two weeks, TWT continued to work on several outstanding items, including installation of the bow pud,

---

[9] Waid Dec. ¶ 5, Exhibit 4, Emails from Steve Tolle, FOSS_000041–46.
[10] *Id.*
[11] Waid Dec. ¶ 6, Exhibit 5, Tradewinds Production,TT 00001–11.
[12] Waid Dec. ¶ 5, Exhibit 4, Emails from Steve Tolle, FOSS_000041–46; ¶ 7, Exhibit 6, Foss Incident Statement to Tradewinds, FOSS_000040.
[13] *Id.; see also* Waid Dec. ¶ 6, Exhibit 5, Tradewinds Production, TT 00001–11. However, this fact is immaterial to this motion.
[14] Waid Dec. ¶ 8, Exhibit 7, Emails between Steve Tolle and Dominique Smith, FOSS_000884-85.

MOTION FOR PARTIAL
SUMMARY
JUDGMENT - 5
NO.: 2:24-CV-00237-JNW, C/W
2:24-CV-00246

**LISKOW & LEWIS**
**Raymond T. Waid**
**Elizabeth A. Strunk**
**Elizabeth B. McIntosh**
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
(504) 556-4042 Telephone
rwaid@liskow.com

repairs to the tow winch intensifier, repairs to the hydraulic ram's hold down hook, and installation of the bilge pump.[15] On or about May 21, TWT finally completed its work on the Vessel.[16]

At the time of the incident, Tradewinds was the documented operator of the Vessel with the U.S. Coast Guard.[17] It was not until May 23, 2023—***over two weeks*** after Dufrene's injury—that the U.S. Coast Guard Certificate of Inspection was issued with Foss Maritime's name as the operator.[18] The next day, the Vessel got underway and departed with Foss's crew.[19] The sale of the Vessel from MTL to FOWH finally closed on June 5, 2023, as evidenced by the disbursement of the sale proceeds to MTL from the escrow agent.[20]

### D.    Tradewinds' Claims for Indemnity, Defense, and Insurance Coverage

On August 22, 2023, Dufrene filed suit in King County Superior Court, Seattle, Washington against Foss Maritime and TWT. Foss and Tradewinds timely filed Limitation Actions in this Court on February 21 and 22, 2024, respectively, which were subsequently

---

[15] Waid Dec. ¶ 9, Exhibit 8, Steve Tolle Daily Update, FOSS_003085–93.

[16] *Id.*; Waid Dec. ¶ 10, Exhibit 9, Grosshans Update, Foss Production FOSS_001171–73.

[17] Waid Dec. ¶ 11, Exhibit 10, Certificate of Inspection for the M/V REBEKAH listing Tradewinds Towing as operator, FOSS_001635–36, and Exhibit 11, Certificate of Inspection for the M/V REBEKAH listing Foss Maritime as operator, FOSS_003528-003530 While the amendment to the COI is backdated to 5/11/23, note that the USCG advised Foss as of May 19, 2023 (two weeks after the incident) that the COI was still "under review." *See* Waid Dec. ¶ 12, Exhibit 12, USCG email to Foss, FOSS_003113–14.

[18] Waid Dec. ¶ 13, Exhibit 13, Grosshans Update, FOSS_001197–98.

[19] Waid Dec. ¶ 14, Exhibit 14, Departure Notice, FOSS_003209.

[20] Waid Dec. ¶ 15, Exhibit 15, Closing Disbursement Statement from Kim Marine Documentation and correspondence evidencing the wire transfer of same, FOSS_003531-003540. The Bill of Sale was dated as of the date of execution of the PSA and held in escrow and not effective until the sale closed on June 5, 2023. *See* Waid Dec. ¶ 16, Exhibit 16 Waid Dec. ¶ 16, Exhibit 16, Email Chain with Escrow Agent, Kim Marine Documentation, FOSS_000577-84.

MOTION FOR PARTIAL
SUMMARY
JUDGMENT - 6
NO.: 2:24-CV-00237-JNW, C/W
2:24-CV-00246

LISKOW & LEWIS
Raymond T. Waid
Elizabeth A. Strunk
Elizabeth B. McIntosh
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
(504) 556-4042 Telephone
rwaid@liskow.com

consolidated. On June 5, 2024, Tradewinds answered Foss's Limitation Complaint and asserted claims of its own against FOWH, including for contractual indemnity, defense, and insurance coverage with respect to Dufrene's claims.[21]

Tradewinds asserts that these obligations are owed under the following provisions of the Bareboat Charter:

ARTICLE 9. <u>INSURANCE</u>

CHARTERER shall procure and maintain, at its sole cost and expense, ***during the entire period of this Charter Party***, the following insurance, in form and with companies satisfactory to MTL:

\* \* \*

9.2. Protection and Indemnity insurance with respect to the Vessel for, without limitation,…claims (including those of CHARTERER's employees) arising from death or personal injury, or from loss of or damage to property, with a minimum limit of $20,000,000 applicable to any one accident or occurrence.

\* \* \*

ARTICLE 10. <u>INDEMNITY</u>

10.1 CHARTERER shall release, defend, indemnify and hold MTL, its parent, and their affiliated companies, and all of their officers, directors, employees, and insurers, and the Vessel (collectively, the "Indemnitees") harmless from and against all claims, damages, liability, expenses, fines, penalties, demands, lawsuits and judgments for loss or damage to all property (including without limitation the Vessel), environmental, pollution, and personal injury, illness or death of all persons (including without limitation CHARTERER's

---

[21] Dkt. # 19 at p. 6–9.

**LISKOW & LEWIS**
**Raymond T. Waid**
**Elizabeth A. Strunk**
**Elizabeth B. McIntosh**
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
(504) 556-4042 Telephone
rwaid@liskow.com

> and its invitees' employees) ***arising out of or in connection*** ***with, directly or indirectly, CHARTERER's use and*** ***possession of the Vessel pursuant to this Charter Party*** including loading, unloading, ingress, and egress of personnel or cargo, regardless of the cause, even though caused in whole or in part by a pre-existing condition, or the negligence (sole or concurrent), strict liability, or the unseaworthiness or defective condition of vessels, craft or premises owned, supplied, hired, chartered or borrowed (under other agreements or otherwise) of or by the Indemnitees (including but not limited to the Vessel).[22]

Contrary to Tradewinds' assertions, the Bareboat Charter clearly and unambiguously provides that these provisions and their attendant obligations apply only during the "period of" and "pursuant to" the Charter Party, which did not commence until the Vessel was delivered to Foss—***weeks after*** the incident occurred. Foss is therefore entitled to judgment, as a matter of law, dismissing Tradewinds' claims against it for indemnity, defense, and insurance coverage.

## II.    LAW AND ARGUMENT

### A.    Legal Standard

Summary judgment is appropriate when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "If the moving party initially shows the non-movant's case lacks support, the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." [23]

---

[22] Waid Dec. ¶ 3, Exhibit 2, Bareboat Charter, FOSS_000031–39.
[23] *All. for Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 504 (5th Cir. 2018) (internal quotation marks omitted); *see also Icicle Seafoods, Inc. v. BNSF Ry. Co.*, 706 F. Supp. 3d 1168, 1168 (W.D. Wash. 2023).

**LISKOW & LEWIS**
**Raymond T. Waid**
**Elizabeth A. Strunk**
**Elizabeth B. McIntosh**
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
(504) 556-4042 Telephone
rwaid@liskow.com

"Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial."[24]

"The interpretation of a contract is a matter of law properly decided on summary judgment."[25] Under the general maritime law "a court may not look beyond the written language of a contract to determine the intent of the parties unless the disputed contract provision is ambiguous."[26] Federal maritime law applies in this case because "[a] bareboat charter party is a maritime contract whose interpretation and construction is governed by maritime law,"[27] and because the Bareboat Charter expressly provides that it "shall be governed by the General Maritime Law of the United States, insofar as applicable."[28]

---

[24] *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (holding that the non-movant must "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof").

[25] *Valve Corp. v. Sierra Ent. Inc.*, 431 F. Supp. 2d 1091, 1095 (W.D. Wash. 2004) (citing *United States v. King Features Entm't, Inc.,* 843 F.2d 394, 398 (9th Cir.1988)); *see Offshore Marine Contractors, Inc. v. Palm Energy Offshore, L.L.C.*, 779 F.3d 345, 348 (5th Cir. 2015) ("Interpretation of the terms of a contract, including an indemnity clause, is a matter of law.").

[26] *Intl. Marine, L.L.C. v. FDT, L.L.C.*, 619 Fed. App'x 342, 349 (5th Cir. 2015) (citing *Corbitt v. Diamond M. Drilling Co.,* 654 F.2d 329, 332–33 (5th Cir. 1981)); *see Starrag v. Maersk, Inc.*, 486 F.3d 607, 616 (9th Cir. 2007) ("A basic principle of contract interpretation in admiralty law is to interpret, to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous." (quoting *Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004))).

[27] *Weeks Marine, Inc. v. Picone, Inc.*, No. 97 Civ. 9560(SAS), 1998 WL 717615, at *7 (S.D.N.Y. Oct. 14, 1998); *see Holcim Canada Holdings LLC v. Barge Eagle, Inc.*, No. 2:23-CV-432-RSM, 2024 WL 2943835, at *3 (W.D. Wash. June 11, 2024).

[28] Waid Dec. ¶ 3, Exhibit 2, Bareboat Charter, FOSS_000031-000039, Article 17.8.

MOTION FOR PARTIAL
SUMMARY
JUDGMENT - 9
NO.: 2:24-CV-00237-JNW, C/W
2:24-CV-00246

**LISKOW & LEWIS**
**Raymond T. Waid**
**Elizabeth A. Strunk**
**Elizabeth B. McIntosh**
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
(504) 556-4042 Telephone
rwaid@liskow.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**B.      Under the plain language of the Bareboat Charter, Foss does not owe Tradewinds indemnity, defense, and insurance coverage.**

The terms of the Bareboat Charter are clear and unambiguous. FOWH's charter of the Vessel was for a limited "period of hire" and "charter term" that "commenc[ed] upon delivery" of the Vessel by MTL.[29] "Delivery" specifically occurred when MTL delivered the Vessel to FOWH, and FOWH accepted it, either on the Effective Date of the Bareboat Charter "or otherwise."[30] The Bareboat Charter further provided that the "period of hire" and "charter term" was when FOWH had "full, complete, and exclusive possession, command, and control of [the Vessel], and of its operation and navigation."[31]

The language of the Bareboat Charter is fully consistent with principles of general maritime law, under which a bareboat charter does not exist until the charterer assumes full "possession, command, and navigation" of the vessel.[32] Said another way, for a bareboat charter to exist, "the owner of the vessel 'must completely and exclusively relinquish possession, command, and navigation'" to the charterer.[33]

---

[29] *Id.* at Articles 1.2, 3, 4.

[30] *Id.* at Article 4.

[31] *Id.* at Article 1.2

[32] *Guzman v. Pichirilo*, 369 U.S. 698, 699-700 (1962) (holding that a bareboat charter is not created until the owner of the vessel "completely and exclusively relinquish[es] 'possession, command, and navigation' thereof to the demisee."); *see also Am. Cruise Lines v. United States*, 96 F.4th 283, 287 (2d Cir. 2024) ("The fundamental characteristic of a demise or bareboat charter is the shifting of the exclusive possession and control of the chartered vessel from the owner to the charterer during the charter period") (citing *Blanco v. United States*, 775 F.2d 53, 57–58 (2d Cir. 1985))).

[33] *Crowley Marine Servs., Inc. v. Hunt*, No. C93-1334C, 1995 WL 694094, at *6 (W.D. Wa. July 21, 1995) (quoting *Guzman*, 369 U.S. at 699)); *see also Matter of Cheramie Marine, LLC*, No. 21-2371, 2023 WL 4295710, at *8 (E.D. La. June 30, 2023) ("A vessel owner has the heavy burden of establishing facts that give rise to the relief under a bareboat charter . . . ."); *Backhus v. Trans. Cas. Co.*, 532 So. 2d 447, 449 (La. App.

**LISKOW & LEWIS**
**Raymond T. Waid**
**Elizabeth A. Strunk**
**Elizabeth B. McIntosh**
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
(504) 556-4042 Telephone
rwaid@liskow.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

In *Crowley Marine Services, Inc. v. Hunt*, this Court was faced with the identical legal issue Foss raises here. On a motion for summary judgment, the defendants argued that they had no obligation to provide insurance coverage to a barge at the time of an incident because the barge had not yet been delivered to the charterer and therefore, the bareboat charter and the obligations thereunder had not commenced. In *Crowley Marine*, the accident at issue occurred on May 14. While the charter party provided for delivery on May 13, in actuality:

> The evidence unequivocally demonstrates that, at the time of [the incident], the barge had not been delivered to [the charterer], had not been inspected, and had no [charterer] equipment or personnel aboard. [The charterer] had neither possession nor control of the barge at the time of the accident. The barge was, in fact, en route to a terminal where certain [charterer] equipment was to be loaded and where the barge would be inspected. The barge was inspected by the Coast Guard on May 16. It was not released to [charterer] for its exclusive use in Lake Washington until May 17.[34]

This Court specifically rejected the vessel owner's argument that "the term of the charter began on May 13, regardless of who had physical custody and control of the vessel on that date."[35] The Court instead found it clear that the purpose of the charterer's insurance obligation was to protect the parties during the period that the barge was in the charterer's

---

1st Cir. 1988) (finding "heavy burden" of establishing existence of a bareboat charter met because the bareboat charterer had "exclusive responsibility for operation, maintenance, and upkeep of the vessel.").

[34] *Id.*

[35] *Id.* at *7.

MOTION FOR PARTIAL
SUMMARY
JUDGMENT - 11
NO.: 2:24-CV-00237-JNW, C/W
2:24-CV-00246

**LISKOW & LEWIS**
**Raymond T. Waid**
**Elizabeth A. Strunk**
**Elizabeth B. McIntosh**
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
(504) 556-4042 Telephone
rwaid@liskow.com

possession and control.[36] Because the barge was not in the charterer's **exclusive** possession at the time of the incident, the Court granted the requested summary judgment, concluding that the bareboat charter had not commenced for purposes of the duty to provide coverage at the time of the incident.[37] The Ninth Circuit affirmed the District Court's findings.[38]

Here, the same result is warranted. The plain language of the Bareboat Charter makes clear that the indemnity and insurance provisions Tradewinds attempts to assert apply only "during the period of" and "pursuant to this Charter Party."[39] And it is equally clear, the Bareboat Charter had not commenced at the time of Dufrene's injury because the Vessel remained in Tradewinds' possession and control. As in *Crowley Marine*, the Vessel was still undergoing inspections and work at **Tradewinds'** facility and by **Tradewinds'** employees at the time of the incident.[40] Tradewinds was also the documented operator of the Vessel in the U.S. Coast Guard Certificate of Inspection at the time of the incident.[41]  Further, the fact that two Foss employees were on board the Vessel at the time is of no moment, as it is indisputable that Foss did not have exclusive possession and control of the Vessel at the time

---

[36] *Id.*

[37] *Id.*

[38] *Crowley Marine Servs. Inc. v. Hunt*, 95 F.3d 1145 (9th Cir. 1996) (unpublished) (affirming the district court and noting that "the term of the charter clearly had not begun on May 13, as Crowley did not deliver the barge until May 17.").

[39] Waid Dec. ¶ 3, Exhibit 2, Bareboat Charter, Articles 9, 10. In fact, the indemnity provision relied on by Tradewinds further limits its applicability to injury "arising out of or in connection with, directly or indirectly, CHARTERER's use and possession of the Vessel," again reinforcing that the obligation did not apply until the Bareboat Charter commenced. *Id.*

[40] Waid Dec. ¶ 9, Exhibit 8, Steve Tolle Daily Update, FOSS_003085–93.

[41] Waid Dec. ¶ 11, Exhibit 10, Certificate of Inspection for the M/V REBEKAH listing Tradewinds Towing as operator, FOSS_001635–36.

**LISKOW & LEWIS**
**Raymond T. Waid**
**Elizabeth A. Strunk**
**Elizabeth B. McIntosh**
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
(504) 556-4042 Telephone
rwaid@liskow.com

of the incident.[42] In fact, TWT was still performing work on the Vessel **over two weeks** after the incident.[43]

Accordingly, at the time of the incident, the Vessel had not been delivered to Foss's exclusive possession and control; consequently, the Bareboat Charter—and the insurance and indemnity obligations contained therein—had not commenced. Foss is therefore entitled to judgment as a matter of law dismissing Tradewinds' claims for indemnity, defense, and insurance coverage against it.

## III.    CONCLUSION

For the reasons set forth herein, the indemnity and insurance provisions relied on by Tradewinds are inapplicable to the instant matter. Foss's motion for partial summary judgment should be granted, and Tradewinds' claims against Foss for indemnity, defense, and insurance coverage should be dismissed, with prejudice.

LISKOW & LEWIS

BY:   *Raymond T. Waid*

Raymond T. Waid, WSBA # 53671
Elizabeth A. Strunk, WSBA #57894
Elizabeth B. McIntosh, WSBA #60398
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
(504) 556-4042 Telephone
(504) 556-4108 Facsimile
rwaid@liskow.com
eastrunk@liskow.com

---

[42] *Id.*
[43] Waid Dec. ¶ 10, Exhibit 9, Grosshans Update, FOSS_001171–73.

MOTION FOR PARTIAL
SUMMARY
JUDGMENT -  13
NO.: 2:24-CV-00237-JNW, C/W
2:24-CV-00246

LISKOW & LEWIS
**Raymond T. Waid**
**Elizabeth A. Strunk**
**Elizabeth B. McIntosh**
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
(504) 556-4042 Telephone
rwaid@liskow.com

ebmcintosh@liskow.com
*Attorneys for Foss Offshore Wind*
*Holdings, LLC and Foss Maritime*
*Company, LLC*

## CERTIFICATE OF WORD COUNT

I certify that this memorandum contains 3550 words, in compliance with the Local

Civil Rules.

BY:   *Raymond T. Waid*

MOTION FOR PARTIAL
SUMMARY
JUDGMENT -  14
NO.: 2:24-CV-00237-JNW, C/W
2:24-CV-00246

**LISKOW & LEWIS**
**Raymond T. Waid**
**Elizabeth A. Strunk**
**Elizabeth B. McIntosh**
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
(504) 556-4042 Telephone
rwaid@liskow.com