UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

SEATTLE DIVISION

| | |
|---|---|
| *In the Matter of* <br><br> THE MV REBEKAH, <br> Official No. 623866 <br> and Her Engines. Gear, Tackle, Apparel, and Appurtenances | IN ADMIRALTY <br><br> Case No. 2:24-cv-237-TSZ <br><br> *consolidated with* <br><br> Case No. 2:24-cv-246-JNW <br><br> **CLAIMANT STEVEN DUFRENE'S MOTION FOR SUMMARY JUDGMENT** <br><br> Note on Motion Calendar: September 11, 2025 <br><br> ORAL ARGUMENT REQUESTED |

**Summary**

This Court should grant summary judgment for Claimant Steven Dufrene in this limitation-of-liability proceeding. The evidence reveals that there is no reasonable dispute that the parties seeking this relief had privity and knowledge that their negligence or the unseaworthiness of their vessel was *a* proximate cause of Claimant's injuries. Accordingly, this Court should deny all relief requested in the complaints, vacate the pending injunction, and permit Claimant to continue pursuing his claims for damages before a jury in King County Court.

Claimant Steven Dufrene's
Motion for Summary Judgment
- 1 -
Brian A. Beckcom
Brendan T. Fradkin
VB Attorneys
1220 Augusta Drive, Suite 240
Houston, Texas 77057

**Factual Background**

Claimant Steven Dufrene is an American seaman. In May 2023, Tradewinds Towing employed Dufrene and assigned him to work as a member of the crew of a tugboat, the *MV Rebekah*. While working aboard the *Rebekah*, Dufrene's left foot and toes were crushed in a winch, causing him to sustain serious injuries.

Before the incident occurred, Tradewinds agreed to sell the *Rebekah* to Foss Maritime Company.[1] Because of delays in closing the sale, Tradewinds and Foss agreed that Foss would bareboat charter the *Rebekah* until the sale closed.[2] Dufrene's injury occurred while this agreement was in place.[3]

In June 2023, Dufrene filed suit against Tradewinds and Foss in King County Superior Court, in which he sought damages for their negligence (under the Jones Act) and for the unseaworthiness of the *Rebekah* (under general maritime law).[4] In February 2024, Foss filed a complaint for relief in this Court under the federal Limitation of Liability Act.[5] That same month, Tradewinds filed a separate complaint in this Court seeking the same relief.[6] In May 2024, this Court ordered a stay in the King County proceeding, and consolidated both limitation proceedings into this case.[7]

---

[1] *See* Ex. A (Richards Depo.) 30:10–33:25 & Ex. B (Tradewinds Doc. Prod.) TT-002506–11.

[2] ECF 49 at 2. ECF 49 at 2. Because the four limitation plaintiffs filed two separate joint complaints, for the Court's convenience, Claimant refers to Foss Offshore Wind Holdings LLC and Foss Maritime LLC collectively as "Foss" and refers to Tradewinds Towing, LLC and Magazine Tug LLC collectively as "Tradewinds."

[3] *See* Ex. A (Richards Depo.) 33:17–36:3 & Ex. B (Tradewinds Doc. Prod) TT-002521–29.

[4] ECF 15-1.

[5] ECF 1.

[6] ECF 1, *In the Matter of the Complaint of Tradewinds Towing LLC*, No. 2:24-cv-246-JNW.

[7] ECF 10 at 3 ¶ 5, ECF 12.

**Argument**

**A.   This Court should grant summary judgment in Dufrene's favor because none of the plaintiffs in *this* proceeding are entitled to relief under the federal Limitation of Liability Act.**

In a limitation-of-liability proceeding, the injured party first has the burden of establishing the act or condition that caused the injury.[8] Importantly, the injured party only has to prove that a negligent act and/or an unseaworthy condition was *a* proximate cause of the injury.[9] If the injured party meets this burden, shipowners and operators then have the burden of proving that the act or condition was outside of its "privity and knowledge."[10]

This Court should grant a summary judgment in Dufrene's favor and dismiss this proceeding because it cannot be genuinely disputed that (1) the *Rebekah's* defective winch—or Tradewinds and Foss's negligence—was *a* proximate cause of Dufrene's injuries; and (2) Treadwinds and Foss both had "privity and knowledge" of their negligent acts and/or the unseaworthy condition that caused Dufrene's injury.

**1.   No reasonable person could dispute that a defective winch on the *Rebekah* (and ordering Dufrene to use it) were proximate causes of Dufrene's injuries.**

*First*, it cannot be genuinely disputed that the winch on the *Rebekah* was *a* proximate cause of Dufrene's injuries. Dufrene testified at his deposition that, immediately before the injury, he was standing on top of the tow winch while it was "re-spooling," guiding the tow wire so that it would feed correctly onto the drum.[11] While doing so, the spoke of the main tow drum

---

[8] *See, e.g.*, *In re BOWFIN M/V*, 339 F.3d 1137 (9th Cir. 2003).

[9] *See, e.g.*, *Hercules Carriers, Inc. v. Claimant State of Fla., Dep't of Transp.*, 768 F.2d 1558, 1574 (11th Cir. 1985)

[10] *In re BOWFIN M/V*, 339 F.3d at 1137.

[11] *See* Ex. C (Dufrene Depo.) 137:16–138:6.

Claimant Steven Dufrene's
Motion for Summary Judgment                   - 3 -                       Brian A. Beckcom
                                                                          Brendan T. Fradkin
                                                                          VB Attorneys
                                                                          1220 Augusta Drive, Suite 240
                                                                          Houston, Texas 77057

came down in a counterclockwise motion and grabbed the toe of his steel-toed boot, pulling his foot into the drum, and causing him to lose his balance and fall backward.[12]

Tradewinds's incident report following Dufrene's injury confirms Dufrene's version of events:

> **What was the deck surface in the area of the incident:** Top of winch.
>
> **What type of shoes were worn by the injured person at the time of the incident:** Steel toed boots.
>
> **Did the injured person provide information on how this incident occurred:** Yes.
>
> **\*If yes, explain**: Standing on top of tow winch, wire was feeding out, turned, foot slipped into drum got caught, lost balance.[13]

Witness statements attached to Tradewinds' incident report also identify the winch as a cause of Dufrene's injuries. For example, Tradewinds employee Ernest Juhasz stated:

> I…was on shore operating the tow wire spooler about 30 yards from the back of the tug *Rebekah*. [Dufrene] was on the winch drum trying to push the wire over so the wire wouldn't bird's nest. [Dufrene] fell back on to the deck. I ran down to the boat and seen [Dufrene] on the ground holding his leg and immediately called 911.[14]

Tradewinds employee Grady Newton provided a similar account:

> I was standing at the stern controls operating the winch during the process of installing the new tow cable. We had stopped the winch to try to adjust the level wind/tighten the wire against the drum. Dufrene was directing me to periodically turn the drum as he was making various adjustments. He gets himself positioned on the [starboard] side of the winch, standing out on the area just outside the drum, and he asks me via hand signals and verbally to spool the cable out. I engaged the winch to spool the cable out. About 2/3 second later, Steve screams and I see him fall backwards though not all the way to the deck. Simultaneously as I hear the scream, I disengage the winch.[15]

---

[12] *See* Ex. C (Dufrene Depo.) 121:11–126:25.

[13] Ex. B (Tradewinds Doc. Prod) TT-02789–90.

[14] Ex. B (Tradewinds Doc. Prod) TT-02792

[15] Ex. B (Tradewinds Doc. Prod) TT-02793

**Claimant Steven Dufrene's Motion for Summary Judgment**      - 4 -      Brian A. Beckcom
Brendan T. Fradkin
VB Attorneys
1220 Augusta Drive, Suite 240
Houston, Texas 77057

*Second*, it also cannot be genuinely disputed that the above-discussed winch was defective. In his deposition, Dufrene testified that the winch on the *Rebekah* was repaired following a collision with another vessel in May 2022.[16] Additionally, Foss employee Mark Grosshans, who served as the Captain of the *Rebekah* at the time of the Dufrene's injury, testified that the winch was modified after Foss gave the vessel to Tradewinds such that "the winch's warping head continuously turned while the winch was in operation."[17] Captain Grosshans confirmed that "this can cause a problem" and did not have any knowledge of why somebody might want the warping head to be constantly moving.[18] According to Grosshans, Tradewinds was fixing the warping head because "it wasn't the standard operating procedure for the winch to do that" and "that was an alteration that was not consistent with all the boats that I'd been on."[19] And three weeks after the incident, Captain Grosshans sent an e-mail to fellow Foss employee Steve Tolle, in which he identified several problems with the *Rebekah*, and which included the following admission:

> The tow winch:
> The warping head turns continuously as soon as the hydraulics are turned on. There is directional control, but no way of stopping the warping head from turning. This renders the warping head all but useless and a significant safety hazard.
> The controller for the underrider drum is very touchy when it comes to stopping the drum.
> Little or nothing at the detente/stop position. It's hard to stop the drum.[20]

---

[16] *See* Ex. B (Tradewinds Doc. Prod) TT-000012–20; Ex. C (Dufrene Depo.) 190:11–191:25; 192:10–11.

[17] *See* Ex. D (Grosshans Depo.) 16:18–25. Grosshans described the "warping head" as "a fitting on the side of the winch, a drum that lines are wound on, and they're used to pick up a pole, or pay out, slack off." 17:1–4. *See also* 9:25–10:10 (winch was altered).

[18] *See* Ex. D (Grosshans Depo.) 17:7–10.

[19] *See* Ex. D (Grosshans Depo.) 16:18–25; 18:15–25.

[20] *See* Ex. E (Foss Doc. Prod.) FOSS_001103.

**Claimant Steven Dufrene's**
**Motion for Summary Judgment**              - 5 -

Brian A. Beckcom
Brendan T. Fradkin
VB Attorneys
1220 Augusta Drive, Suite 240
Houston, Texas 77057

*Third*, it also cannot be genuinely disputed that neither Foss nor Tradewinds implemented procedures to mitigate the safety hazards presented by the *Rebekah's* defective winch, which federal regulations require.[21] This is also evident from Tradewinds' above-referenced incident report, which states the following "lessons learned" and "items the company can improve as a result of this incident":

> *In the future*, before any removal or addition of wire rope to the drum, there will be a mandatory safety brief and a job safety analysis conducted.[22]

Because reasonable people could only conclude from this statement that Dufrene was ordered to use the winch *without* a pre-work safety briefing or with information provided by a pre-work job safety analysis, they would also necessarily conclude that Foss and Tradewinds' failure to do so was also a proximate cause of Dufrene's injuries.

**2.  No reasonable person could dispute that both Foss and Tradewinds had "privity and knowledge" of the cause of Dufrene's injury**

Having established that the *Rebekah's* defective winch was *a* proximate cause of Dufrene's injuries, this Court should grant summary judgment and dismiss this limitation-of-liability proceeding because no reasonable person could conclude that the *Rebekah's* defective winch was outside any of the petitioners' "privity and knowledge."[23] At the outset of this discussion, it is important to emphasize that when Congress passed the Limitation of Liability Act in 1851, its purpose was to protect shipowners "who suffer a misfortune *at sea* from exposure to excessive liability claims."[24] Put otherwise, Congress recognized that "when the shipowner is *so far removed* from the vessel that he can exert *no control* over the master's conduct, it should

---

[21] *See* Ex. F (Derie Report) p. 3 (citing 46 CFR § 140.510(a)(11)).

[22] *See* Ex. B (Tradewinds Doc. Prod) TT-000006.

[23] *In re BOWFIN M/V*, 339 F.3d at 1137.

[24] *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 446-47 (2001) (emphasis added).

Claimant Steven Dufrene's
Motion for Summary Judgment

- 6 -

Brian A. Beckcom
Brendan T. Fradkin
VB Attorneys
1220 Augusta Drive, Suite 240
Houston, Texas 77057

not be held to the master's negligence; instead, the owner may rely on the master's skill and experience."[25] But as the above-cited evidence already reveals, that is simply not the case here, as there is no dispute that representatives of the ships owners and operators were on board the *Rebekah*, which was in a harbor, at the time of Dufrene's injury.

Accordingly, given the Act's purpose, disproving the "privity and knowledge" requirement is not particularly onerous: Owners and operators have "privity" if they participated in the negligent conduct or brought about the unseaworthy condition.[26] And "knowledge," when—as here— the owner or operator is a corporation, is judged not only by what the corporation's managing officers actually knew, but also by what they should have known with respect to conditions or actions likely to cause the loss or injury.[27] None of the limitation petitioners can genuinely contend that they could prove the absence of either.

With regard to Foss's privity and knowledge, it is undisputed that, at the time of the injury, Foss assumed a portion of operational control of the *Rebekah* under a bareboat charter.[28] Foss insured the *Rebekah*, deployed crew members, and began modification and preparation for work.[29] Yet numerous safety-critical repairs remained unaddressed.[30] Foss's own representative, Andrew Richards, confirmed that Foss had physical possession of the vessel prior to the formal "punch list" completion.[31] And there can be no dispute that the *Rebekah's* captain, Mark

---

[25] *In re Cent. Gulf Lines, Inc.*, 176 F. Supp. 2d 599, 620 (E.D. La. 2001) (citing *In re Hellenic, Inc.*, 252 F.3d 391, 396 (5th Cir. 2001)).

[26] *Rigsbee v. City & Cnty. of Honolulu*, No. 1:17-cv-532, 2019 WL 984276, at *6 (D. Haw. Feb. 28, 2019).

[27] *Rigsbee*, 2019 WL 984276, at *6.

[28] *See* Ex. B (Tradewinds Doc. Prod) TT-002521–29.

[29] *See* Ex. E (Foss Doc. Prod.) FOSS_003528–30.

[30] *See* Ex. E (Foss Doc. Prod.) FOSS_000884–85.

[31] *See* Ex. A (Richards Depo.) 62:2–65:16.

| Claimant Steven Dufrene's Motion for Summary Judgment | - 7 - | Brian A. Beckcom<br>Brendan T. Fradkin<br>VB Attorneys<br>1220 Augusta Drive, Suite 240<br>Houston, Texas 77057 |
|---|---|---|

Grosshans was standing next to Dufrene when he was injured, and that the winch was being operated by a Foss employee.

With regard to Tradewinds's privity and knowledge, its internal communications show that despite continued work by its employees, no job safety analysis was conducted, no supervisor was designated, and no language accommodations were made despite crew communication issues.[32] Tradewinds continued work aboard the vessel and failure to complete the "punch list" means that a full turnover of the vessel had likely not yet occurred. And, of course, Tradewinds knew that the winch was defective because they ordered Dufrene to fix it and told him how to do so.[33] In sum, Tradewinds knew exactly what was being done and how it would be done. If such evidence does not satisfy the "privity-and-knowledge" requirement, these words have no meaning.

## Conclusion

The only relief that Tradewinds and Foss seek in this Court is an exoneration from or a limitation of their liability for Dufrene's injuries. Because they are not entitled to this relief as a matter of law, this Court should grant Dufrene's motion for summary judgment, deny Tradewinds and Foss's request for relief under the Limitation of Liability Act, vacate its pending injunction, and permit Dufrene to continue seeking relief in King County Court.

I certify that this memorandum contains 2,238 words, in compliance with the Local Civil Rules.

DATED: August 14, 2025                   /s/ *Brian A. Beckcom*

---

[32] *See* Ex. B (Tradewinds Doc. Prod.) TT-002788–89.

[33] *See* Ex. B (Tradewinds Doc. Prod.) TT-002792–93; Ex. C (Dufrene Depo.) 102:2–104:15.

Claimant Steven Dufrene's
Motion for Summary Judgment                - 8 -                Brian A. Beckcom
Brendan T. Fradkin
VB Attorneys
1220 Augusta Drive, Suite 240
Houston, Texas 77057