UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE the M/V REBEKAH, Official No. 623866, and HER ENGINES, MACHINERY, GEAR, TACKLE, APPAREL, and APPURTENANCES | C24-0237 TSZ<br>(consolidated with C24-0246 JNW)<br><br>ORDER |

THIS MATTER comes before the Court on a motion for summary judgment, docket no. 77, brought by claimant Stephen Dufrene. Having reviewed all papers filed in support of, and in opposition to, the motion, and having considered the oral arguments of counsel, the Court enters the following Order.

**Background**

These consolidated cases concern an incident that occurred on May 5, 2023, aboard the U.S.-flagged towing vessel known as M/V REBEKAH, Official No. 623866, which was at the time docked in Louisiana. As a result of the incident, Dufrene was injured, and on August 22, 2023, he commenced suit in King County Superior Court against his employer at the time, Tradewinds Towing, LLC ("Tradewinds), and another entity that he alleged "manned, operated, maintained and controlled" the REBEKAH, namely Foss Maritime Company, LLC ("Foss Maritime"). *See* Dufrene Compl. at

ORDER - 1

¶¶ 9–10 (docket no. 15-1).  In the state court matter, Dufrene asserted claims of negligence and unseaworthiness, as well as a claim for maintenance and cure.  <u>Id.</u> at ¶¶ 8–22.

On February 21, 2024, Foss Maritime and a related entity, Foss Offshore Wind Holdings, LLC ("FOWH"), which together will be called the "Foss Entities," initiated this action pursuant to 46 U.S.C. §§ 30501–30530 (the "Limitation Act"), seeking exoneration or limitation of their liability with respect to Dufrene's claims.  <u>See</u> Foss Entities' Compl. (docket no. 1).  On the next day, February 22, 2024, Tradewinds and a related entity, Magazine Tug, LLC ("Magazine"), which together will be called the "Tradewinds Entities," filed Case No. C24-246, seeking similar relief.  <u>See</u> Tradewinds Entities' Compl. (C24-246, docket no. 1).  On May 6, 2024, the matters brought by the Foss and Tradewinds Entities were consolidated.  <u>See</u> Order (docket no. 12).  In addition, on May 6, 2024, Dufrene's state court action was stayed.  Order at ¶ 4 (docket no. 10).

On May 21, 2024, Dufrene submitted a responsive pleading, <u>see</u> Ans. (docket no. 14), and a notice of claim, attached to which was a copy of the complaint he had filed in King County Superior Court, <u>see</u> Dufrene Claim (docket no. 15).  On February 11, 2025, the Court denied the Foss Entities' motion for partial summary judgment, <u>see</u> Minute Order (docket no. 54), and on September 15, 2025, the Court denied the Tradewinds Entities' motion for partial summary judgment, <u>see</u> Minute Order (docket no. 100).  The Foss and Tradewinds Entities dispute whether, at the time Dufrene was injured, a demise or bareboat charter agreement between Magazine (then the owner of the REBEKAH) and FOWH was in effect, and whether, on May 5, 2023, Foss Maritime (as

ORDER - 2

FOWH's sub-charterer) and/or FOWH had possession or control of the REBEKAH; the Court has concluded that these issues involve genuine disputes of material fact precluding summary judgment.  *See* Minute Orders (docket nos. 54 & 100).

In his motion for summary judgment, Dufrene contends that his injury was, as a matter of law, proximately caused by the unseaworthiness of the REBEKAH's winch, that both the Foss and Tradewinds Entities knew or were in privity with those who knew about the alleged unseaworthiness of the winch, and that, as a result, neither the Foss Entities nor the Tradewinds Entities may continue to pursue their limitation-of-liability claims pursuant to 46 U.S.C. § 30523, which reads in relevant part:

> (a) In general.--Except as provided in section 30524 of this title, the liability of the owner of a vessel for any claim, debt, or liability described in subsection (b) shall not exceed the value of the vessel and pending freight.[1] If the vessel has more than one owner, the proportionate share of the liability of any one owner shall not exceed that owner's proportionate interest in the vessel and pending freight.
>
> (b) Claims subject to limitation.--Unless otherwise excluded by law, claims, debts, and liabilities subject to limitation under subsection (a) are those arising from any embezzlement, loss, or destruction of any property, goods, or merchandise shipped or put on board the vessel, any loss, damage, or injury by collision, or any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, *without the privity or knowledge of the owner*.

46 U.S.C. §§ 30523(a)–(b) (emphasis added).  The Foss and Tradewinds Entities deny that the REBEKAH's winch was unseaworthy and that any defect in the winch was a cause of Dufrene's injury.  They also contend that Dufrene has not established the

---

[1] The fair market value of the REBEKAH is estimated to be $2.5 million.  *See* Compl. at ¶ 23 (docket no. 1); Scafidi Decl. at ¶ 9 (docket no. 1-3).

ORDER - 3

1  requisite privity or knowledge to warrant summary judgment in his favor.  The Court
2  concludes that Dufrene has not met his burden to show the absence of any genuine
3  dispute of material fact and an entitlement to judgment as a matter of law.  *See* Fed. R.
4  Civ. P. 56(a); *see also* *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

5  **Discussion**

6        For purposes of the Limitation Act, the term "owner" means both the owner of the
7  vessel and "a charterer that mans, supplies, and navigates a vessel at the charterer's own
8  expense or by the charterer's own procurement," or in other words, a demise or bareboat
9  charterer.  46 U.S.C. § 30501(2).  Whether an "owner" is entitled to limit its liability
10 pursuant to 46 U.S.C. § 30523 requires two inquiries:  (i) what acts of negligence or
11 conditions of unseaworthiness caused the injury at issue; and (ii) whether the "owner"
12 had knowledge of those same acts of negligence or conditions of unseaworthiness.  *See*
13 *Agrico Chem. Co. v. S.S. ATLANTIC FOREST*, 459 F. Supp. 638, 648 (E.D. La. 1978);
14 *see also* *Polly v. Estate of Carlson*, 859 F. Supp. 270, 274 (E.D. Mich. 1994) (citing
15 *Hercules Carriers, Inc. v. Florida*, 768 F.2d 1558, 1563–64 (11th Cir. 1985)).  "[O]nly
16 knowledge of those factors which are found to have actually caused the accident, and not
17 just any negligent acts or unseaworthy conditions" preclude an "owner" from limiting its
18 liability.  *See Agrico*, 459 F. Supp. at 648 (citing *Farrell Lines Inc. v. Jones*, 530 F.2d 7
19 (5th Cir. 1976)).  A claimant bears the burden of proving negligence or unseaworthiness,
20 and the "owner" bears the burden of establishing a lack of "privity or knowledge."  *See*
21 *Polly*, 859 F. Supp. at 274; *Agrico*, 459 F. Supp. at 648.
22 / / /
23

ORDER - 4

Dufrene contends that his injury was proximately caused by (i) an unseaworthy tow winch, and/or (ii) a failure to conduct a pre-work safety briefing and/or provide a pre-work job safety analysis.  *See* Dufrene's Mot. at 3–6 (docket no. 77).  In asserting that the REBEKAH's tow winch was defective, Dufrene relies on evidence that the winch was repaired after a collision with another vessel in May 2022, about a year before he was injured.  *See id.* at 5 & n.16.  He does not, however, explain how the repair was inadequate.  Dufrene also states that "the winch was modified" so that "the winch's warping head[2] continuously turned while the winch was in operation."  *Id.* at 5 & n.17.  He has not, however, offered any testimony (expert or lay) linking the "warping head" to his injury.  *See* Derie Report, Ex. F to Dufrene's Mot. (docket no. 77-6) (Dufrene's marine safety expert mentioned the "warping head," but did not opine that its continuous turning contributed to Dufrene's injury).  Moreover, although an incident report stated that, "[i]n the future before any removal and addtion [sic] of wire rope to the drum there will be a mandatory safety brief and a Job Safety Analysis conducted," *see id.* at ¶ 10.2 (citing Ex. 5 to Dufrene Dep.); Ex. B to Dufrene's Mot. (docket no. 77-2 at 41), Dufrene cites no evidence suggesting that a pre-job safety meeting did not occur or that the absence of such briefing played a role in his injury.  *See* Dufrene Mot. at 6 (docket no. 77).

---

[2] The Tradewinds Entities have explained that the "warping head" or "gypsy head" is "an accessory attached to the side of the towing winch, which is typically used in the handling of smaller lines such as mooring lines."  Tradewinds Entities' Resp. at 11 (docket no. 87).  The Tradewinds Entities assert that no evidence exists of the "warping head" being in use at the time of, or playing any role in causing, Dufrene's injury.  *Id.*

ORDER - 5

According to the Foss Entities, "the sole cause of this incident [was Dufrene's] decision to order [co-worker Grady] Newton to engage the winch while his foot was in a pinch point." Foss Entities' Resp. at 13 (docket no. 83); see also Dufrene Dep. at 186:7–14, Ex. 1 to Waid Decl. (docket no. 83-2) ("Q. [W]ould you agree looking back, that you probably shouldn't have had your foot quite as close to the winch drum as you did; is that fair? A. Yeah, that's fair, yes. Q. If you had your foot not quite as close, then this wouldn't have happened, true? A. Yeah, that's true, yes."); id. at 138:12–23 (when asked whether he agreed with a report indicating that a "loss of situational awareness during this evolution was the primary cause of this incident," Dufrene replied, "Yes"). The Tradewinds Entities argue that the absence of a pre-job safety meeting could not have been a cause of Dufrene's injury because two pre-job safety meetings were actually conducted before the project to replace the REBEKAH's tow wire commenced, but they cite no evidence for support. See Tradewinds Entities' Resp. at 11 (docket no. 87).

Based on this record, the Court concludes that whether the REBEKAH's winch was unseaworthy, whether any negligence occurred, and whether any defect in the winch or any negligence was a proximate cause of Dufrene's injury cannot be decided as a matter of law in Dufrene's favor. Because Dufrene has not met his burden of establishing unseaworthiness or negligence, the Court need not reach the question of whether the Foss and/or Tradewinds Entities had the requisite privity or knowledge.

**Conclusion**

For the foregoing reasons, Dufrene's motion for summary judgment, docket no. 77, is DENIED.

ORDER - 6

The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 10th day of October, 2025.

Thomas S. Zilly
United States District Judge

ORDER - 7